# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

## ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

### JUNE TERM, 1913.

EDWARD SARGENT, respondent,

*v.*

REALTY TRADERS et al., appellants.

[Submitted July 7th, 1913. Decided November 17th, 1913.]

1. An agreement for the sale of lands, which is definite and certain, as to the tract to be conveyed, the price to be paid, and the terms of payment, is sufficiently certain to justify a court of equity in decreeing its specific performance.

2. A vendee of real estate is entitled to appropriate. toward the payment of the purchase price thereof, moneys belonging to him which are in the possession of the vendor, and which are held by the latter for his (vendee's) general use and benefit.

331

3. In decreeing the specific performance, by the vendor, of a contract for the sale of land, a court of equity will not require him to enter into covenants of warranty not stipulated for, and not necessary to effect a transfer of the estate.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Howell.

*Messrs. Jones & Gleeson,* for the appellants.

*Mr. Charles M. Mason,* for the respondent.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

In June, 1912, the Realty Traders corporation held an auction sale of lots comprising a part of a tract of land owned by it in Hudson county, and known as Arlington Park. Sargent attended this sale, and was the successful bidder upon twenty of the lots. The terms of the sale of these lots were agreed upon between him and one Hagedorn, the president of the corporation, by word of mouth, but were not at any time put in writing. This agreement provided that Sargent should pay down $1,069 in cash, pay the remainder of the purchase-money in four years, and pay interest thereon in the meantime. In pursuance of this agreement Sargent deposited his check for $1,069 with the auctioneer while the sale was in progress, and received his receipt therefor. This check was subsequently paid. Shortly after the termination of the auction sale he entered into possession of lots 8, 9, 10 and 11 of block 6 of the Arlington Park tract (these being four of the lots struck off to him at the auction sale), and began the erection of dwelling-houses thereon. The purchase price of these lots was $300 each. While the buildings were in course of erection he demanded from the corporation a deed for the lots, and, that demand not being complied with, filed his bill to compel their conveyance to him. On final hearing the learned vice-chancellor to whom the cause was referred advised a decree directing the Realty Traders to

convey the lots to Sargent by "a good and sufficient warranty deed" upon the payment by him to it of $1,200, less a credit on that payment of $1,069, the amount deposited by him with the auctioneer as above set forth. A decree to this effect was accordingly entered, and from it the Realty Traders now appeals.

The first ground upon which the appellant relies for a reversal of the decree is that the contract, being a verbal one, is unenforceable under the statute of frauds, and is too uncertain in its terms to be taken out of that statute, notwithstanding that there was a part performance by the respondent by a payment of a portion of the purchase-money, entry upon the land under the contract, and the partial erection of buildings thereon by him. This contention apparently rests upon the theory that the oral agreement between the parties was not that which was asserted by the respondent, and is hereinbefore recited, but a very different one, testified to by the president of the appellant company, the terms of which were left to some extent to be settled by future arrangement, and upon which the minds of the parties never met. But what was in fact the real agreement between the respondent and the appellant was a question to be determined from a consideration of all the evidence in the case, and it was found by the learned vice-chancellor to be that affirmed by the respondent. The testimony submitted fully justified such a finding; and the agreement thus established was sufficiently certain, in its material particulars, *i. e.,* as to the land to be conveyed, the price to be paid for it, and the terms of payment, to justify a decree for its specific performance. It is true that the mandate of the decree varies in one respect from the agreement proved, in that it directs the whole of the purchase-money to be paid upon the delivery of the deed; but as this variance would seem to be not harmful to the appellant, and more especially as it is not made a ground of appeal, it cannot be made the basis of a reversal of the decree.

Next, it is contended that the decree is erroneous because it fails to charge the respondent with taxes upon the land paid by the appellant since the time of the making of the agreement. The decree would be fairly open to this criticism if there had

been any proof in the cause that any such taxes had accrued *and been paid* by the appellant. Such proof was wanting, however, and, in its absence, there was no ground for such a provision in the decree.

Thirdly, we are asked to reverse the decree upon the ground that it was error to direct that the whole of the $1,069 deposited by the respondent with the auctioneer should be credited upon the purchase-money, the contention being that only four-twentieths of that amount should be so credited, as the remaining sixteen-twentieths were to be credited on account of the sixteen other lots struck off to the respondent at the auction sale. The deposit was made upon an agreement which was unenforceable under the statute of frauds, so far as the proofs show, except as to the four lots which are the subject of the present litigation, and the respondent, taking advantage of the statute, refused to perform it. Upon such refusal the sixteen-twentieths of the deposit became a fund in the hands of the appellant, held by it for the benefit of the respondent, payable on demand, and recoverable by an action on the common counts. *Smith* v. *Administrators of Smith, 28 N. J. Law (4 Dutch.) 208,* and cases cited. The money being his, the respondent was entitled to appropriate it on account of the payment of the purchase price of the land which the appellant was in equity bound to convey to him under the contract. The decree, consequently, is not legally objectionable upon this ground.

Lastly, it is contended that the decree should be reversed because it compels the appellant to execute a warranty deed, although the agreement contained no provision for such a conveyance. We think this point well taken. The respondent is entitled to a conveyance of the fee, but covenants of warranty are not necessary or appropriate for that purpose. They are distinct from, and collateral to, the transfer of the title. If they are added they do not pass any greater estate than is expressly conveyed by the granting part of the deed. In considering a similar ground of reversal on the review of a decree for a specific performance this court in *Lounsbery* v. *Locander, 25 N. J. Eq. (10 C. E. Gr.) 554,* declared that under a contract to convey

equity will not compel the vendor to enter into any covenants for title where no defect in the title is disclosed, in the absence of any stipulation that the purchaser shall have a conveyance with such covenants. And this is true, not only with relation to covenants for title, but as to all other covenants of warranty. *Stengel* v. *Sergeant, 74 N. J. Eq. (4 Buch.) 20.* As was said in the first of the cited cases, a decree for a conveyance by a deed of bargain and sale will give to the respondent all that he contracted for. To add thereto covenants not stipulated for, which are not necessary to effect a transfer of the estate, will give him what his agreement calls for, and something beyond. For this reason the decree must be reversed and sent back to the court of chancery to be amended to the extent indicated.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, PARKER, BERGEN, VOORHEES, MINTURN, KALISCH, VREDENBURGH, CONGDON, WHITE, TERHUNE, HEPPENHEIMER—13.