HARRY L. SCHWARZ, complainant-appellant,

*v.*

CHARLES H. MUNSON, JOHN F. SHUPE COMPANY, INC., CLARENCE C. GROVER and MARTHA E. GROVER, defendants-respondents.

[Argued March term, 1923. Decided June 18th, 1923.]

1. In a suit for specific performance of a contract for sale of lands where the defence of a *bona fide* purchaser is set up in bar of the complainant's claim that he was entitled to specific performance of the contract, the defence can only succeed by proof of the actual payment of the whole purchase-money, and where the subsequent purchaser has accepted a conveyance and paid part of the purchase-money in good faith before notice of the prior contract, he is entitled to be indemnified by receiving out of the purchase-money which normally would be paid by the vendee to the vendor such sum as will indemnify him against loss which otherwise would result from the payment of a part of the purchase-money.

2. *Haughwout* v. *Murphy, 22 N. J. Eq. 531,* approved and followed.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder.

*Mr. Merritt Lane,* for the appellant.

*Mr. Oliver K. Day,* for the respondents Clarence C. Grover and Martha E. Grover.

*Messrs. King & Vogt,* for the respondents Charles H. Munson and John F. Shupe Co.

The opinion of the court was delivered by

KALISCH, J.

The complainant filed his bill of complaint in the court of chancery for specific performance of a contract for the sale of lands in Dover, which lands one Charles H. Munson had agreed to sell to complainant. The facts are briefly these: Munson, the owner of the lands, gave an exclusive option of purchase thereof to Schwarz. The option bears date March 3d, 1921, and has a stipulation that the option is "to stand until March 8th, 1921." On March 8th, a stipulation in writing was entered into between the parties that the option be extended ten days from the 8th day of March. On the 10th day of March, two days after the signing of the extension, the complainant, by letter of the last-mentioned date, accepted the option, which option and letter of acceptance constitute the contract which the complainant seeks to enforce. With the letter of acceptance Schwarz sent his certified check for $100, payable to Munson on account of the purchase price, to Munson, and further stated in the letter that the balance of the purchase price would be paid upon the delivery of the deed which was to be delivered on or before March 18th.

Before the date fixed for the closing of title, Munson sent a surveyor to make a survey of the property, and according to the latter's testimony he made a survey of the property indicated by the description in the option of purchase, because there was a difference of opinion between the parties as to the location of certain lines, but this difference was settled by them and the location of the lines agreed upon. Subsequently,

there was correspondence between the parties, by their respective attorneys, which culminated in a letter written by Munson's attorney, to the complainant's attorney on April 9th, 1921, notifying him on behalf of Munson that all offers, verbal or written, which Munson made to sell the "Pine Terrace Inn Property," at Dover, or any part thereof to the complainant were revoked and withdrawn. Four days later Munson's attorney wrote to complainant the following: "Dear Sir: Having surrendered to Mr. Munson your option and all rights in his property at Dover, we are returning you herewith Mr. Munson's check of $100 deposit you made thereon." The complainant, upon receipt of the letter, replied to it, sending the reply to Munson, and enclosing the check which was sent to complainant by Munson's attorney, accompanying it with a complete denial of Munson's attorney's assertion, as to any surrender by complainant to Munson of the option or of any rights under it.

It appears that on April 11th, 1921, Munson conveyed to John F. Shupe & Company, Inc., for a consideration of one dollar and other valuable consideration, the lands for which the complainant had the contract of purchase. On April 14th, three days later, the Shupe company, for a consideration of "one dollar and other good and valuable consideration," conveyed the same lands purchased by it as above mentioned to Clarence C. Grover, and on the same day there was recorded a mortgage made by Clarence C. Grover and his wife to Charles H. Munson for $10,000, dated April 14th, 1921, payable in three years from date.

The learned vice-chancellor held that the complainant had not surrendered his option, and in that result we concur. He further held that the conveyance from Munson to the Shupe company was *bona fide,* and that the latter took the property without notice of any claim, right or lien of Schwarz, and, therefore, it was entitled to convey to Clarence C. Grover good title irrespective of the fact whether or not the latter had knowledge of such right or lien, and concluded that Grover was a purchaser from the Shupe company, which was

a purchaser in good faith, and for value, and therefore dismissed complainant's bill.

Of course, if the Shupe company was a *bona fide* purchaser, without notice, we could readily agree with the result reached by the learned vice-chancellor. But we cannot accept his finding in view of the evidence in the cause, that either the Shupe company or Grover was a *bona fide* purchaser for value.

The facts, practically undisputed, are that the Shupe company bought the property for the benefit of John F. Shupe, its president; that immediately after the purchase he concluded that the property was too large for his purpose; that he thereupon entered into a contract with a Mr. Hummer to sell it for him; that Hummer then, on April 14th, 1921, sold it to Grover for $14,000. Shupe paid no cash to Munson upon the delivery of the deed to him, but gave his note therefor of $14,250, dated April 11th, 1921, and payable in one month. The life of the note became extinct almost suddenly by reason of what followed. For after being the owner of the property for three days, Shupe, as stated, sold it to Grover, who gave Shupe a check for $4,000 and a mortgage which was made direct to Munson for the sum of $10,000. Shupe turned over the mortgage to Munson, and gave him a check for $3,000, the difference between that amount and the $4,000 check from Grover being retained by Shupe to satisfy a debt which Munson owed him.

These facts raise the question whether such a transaction rendered either Shupe or Grover a *bona fide* purchaser for value and entitle them for this reason to be protected against the complainant's claim.

In the case of *Haughwout et al.* v. *Murphy, 22 N. J. Eq. 531.* Judge Depue, in speaking for this court, declared that where the defence of a *bona fide* purchaser was set up in bar of the complainant's claim that he was entitled to the specific performance of the contract for the sale of lands, the defence could only succeed by proof of the actual payment of the whole purchase money, and that, where the subsequent

purchaser has accepted a conveyance and paid part of the purchase money in good faith before notice of the prior contract, he is entitled to be indemnified by receiving out of the purchase money which normally would be paid by the vendee to the vendor such sum as will indemnify him against loss which otherwise would result from the payment of a part of the purchase money. These views have received uniform approval by this court. *Cranwell* v. *Clinton Realty Co., 67 N. J. Eq. 540; Leonard* v. *Leonia Heights Land Co., 81 N. J. Eq. 491.*

Since it appears that Shupe paid no cash for the property conveyed to him and all that Grover paid in cash for the transfer of the same to him was the sum of $4,000, by the light of the foregoing decisions he did not become a *bona fide* purchaser for value, but under the equitable doctrine applied in such a situation he is entitled to be indemnified to the extent of the amount in cash paid by him out of the purchase money to be paid for by the complainant for the property.

Respondents' contention that the contract was too uncertain to be enforced in a court of equity, because one of the boundary lines was not definitely fixed in the contract, is of no importance, since after the discovery of the uncertainty of location, the parties agreed upon the location. The further contention that the complainant abandoned his agreement to purchase is without merit, for the preponderance of the evidence negatives such a claim.

We have reached the result that the decree of the court below dismissing complainant's bill must be reversed, with costs, and with the direction that a decree be made in favor of the complainant against the defendant Munson for specific performance; that the defendant Munson be required to return to Grover the purchase money mortgage of $10,000 which the former received from him, and that Grover should receive from the complainant out of the purchase money to be paid by him to Munson, the $4,000 in cash, which amount he, Grover, had paid to Shupe.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, BERGEN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, ACKERSON, VAN BUSKIRK—11.